## No. 12,997.

TRUJILLO ET AL. *v.* WICHITA FARM LIGHTING COMPANY.

(14 P. [2d] 1009)

Decided September 12, 1932.

Mr. I. E. Schachet, for plaintiffs in error.

Mr. Romilly Foote, for defendant in error.

*In Department.*

Mr. Justice Alter delivered the opinion of the court.

The Wichita Farm Lighting Company, a corporation, will hereinafter be referred to as plaintiff, and J. A. Trujillo and Saccero S. Trujillo as defendants. Plaintiff began an action in the county court of Huerfano county to recover judgment against defendants on their two promissory notes payable to plaintiff. Defendants, in their answer, admitted the execution and delivery of the two notes, their refusal to pay the same, and "deny that any sum is due plaintiff." For a second and further defense, defendants attempt to allege false and fraudulent representations. Defendants also filed a cross-complaint, to which answer and cross-complaint plaintiff filed its replication and answer. At the time set for trial, plaintiff presented its motion for judgment on the pleadings, which motion was granted, and judgment thereupon rendered in favor of plaintiff for the amount prayed for in its complaint. Defendants prosecute this writ to review the judgment.

Plaintiff and defendants entered into a written contract for the sale and purchase of a certain carbide generator and other equipment to be used by defendants as a lighting plant. In the contract the following, inter alia, provisions were contained:

"The Wichita Farm Lighting Co. (Hereinafter referred to as the Company), Wichita, Kansas.

"Please ship the following generator and appliances F. O. B. Factory (by freight which I agree to pay) to J. A. Trujillo, La Veta, Huerfano, Colorado.

"Shipping point, County, State. * * *

"This order shall become a contract between the Purchaser and the Company upon acceptance thereof noted in the space below by an officer or credit manager of said Company.

"It is expressly agreed by the Purchaser that no solicitor, other agent or representative of the Company has made any statements, representations or. agreements, verbal or written, * * * (2) as to the amount of carbide that will be required for use in or operation of the Generator purchased hereunder, * * *

"And it is hereby further expressly agreed by the Purchaser that this instrument contains all the terms, conditions and agreements between the Purchaser and the Company, and that no solicitor, other agent or representative of the Company has made any statements, representations or agreements, verbal or written, modifying or adding to the terms, conditions and agreements herein set forth, or any of them, whether the same are especially mentioned in this order or not."

The order was dated August 18, 1930, and was accepted by the following endorsement:

"Accepted at Wichita, Kans., 8-21-1930.

The Wichita Farm Lighting Co.,<br>By R. H. Miller,<br>Credit Mgr."

The notes and contract were executed by defendants in their own proper handwriting, rather than by their marks, so that there was nothing to indicate to plaintiff that it was dealing with ignorant or illiterate persons. By reason of an acceleration clause, both notes were due at the time of the commencement of the action.

Defendants, in their first defense, alleged that "* * * plaintiff, by its agent, represented to defendants that he knew all about said carbide plants; that he had set up a large number of them; that 200 pounds of carbide is sufficient to furnish said plant with fuel for lighting for one year; * * *."

"Defendants further allege that said agent spoke to defendants in the Spanish language; that defendants were ignorant of and unable to speak or read in the English language; that he represented to defendants that said contract contained a provision to the effect that plaintiff guaranteed that 200 pounds of carbide would be sufficient for fuel for one year for said plant, under ordinary use and circumstances; that said agent further represented to defendants that said contract contained a provision that the plaintiff would pay all freight charges to La Veta, Colorado." So far as we can discern from a reading of the answer, these are the misrepresentations upon which defendants rely for relief.

Assuming that the misrepresentations are actionable, they are improperly alleged in the answer. "The proper way to charge representations made by an agent is to allege that the principal made them, and then upon trial prove that the agent made them with the principal's *knowledge, consent,* or *authority.* Whether it is sufficient to allege in the complaint that the agent made them with such knowledge, consent, or authority, we need not decide because there is no allegation that any representation was made with the knowledge, consent or authority of the other defendants." *Erisman v. McCarty,* 77 Colo. 289, 292, 236 Pac. 777. (Italics ours.)

In the instant case, it should be borne in mind that plaintiff had specifically and definitely limited its agent's authority in the premises by apt provisions in its written contract, so that all who entered into any contractual relations with it might be fully and definitely apprised of the limit of the agent's authority; and unless the contract was modified or supplemented, in accordance with the provisions of the contract, and with the consent and approval of the principal, through the officers and agents specifically designated in the contract, it was unavailing for any purpose. Under the allegations in the answer, defendants cannot relieve themselves of the consequences of false and fraudulent representations

of an agent, in the face of the specific and definite limitations upon the agent's authority, as set forth in the contract, to which they became parties. *Balcom v. Michael,* 68 Colo. 407, 408, 191 Pac. 97; *Canon City Co. v. McInerney,* 71 Colo. 492, 494, 208 Pac. 457; *McInerney v. Stores Co.,* 75 Colo. 31, 32, 223 Pac. 756; *Pollard v. Peterson,* 76 Colo. 397, 398, 232 Pac. 668.

It is elementary that a principal has a right to limit his agent's authority; and when this limitation is in writing, and contained in an order which the purchaser must use in submitting his wants to the principal, it is such notice to the purchaser as will bind him. In the instant case, the purchaser, in submitting his order for the approval of the principal, expressly agreed to pay the freight from Wichita to La Veta, and also expressly agreed that no representations, statements or agreements had been made respecting the amount of carbide which would be required in the operation of the generator; and when this written proposal or order was submitted to plaintiff, with these express provisions in it, and the further express provision that no statements, representations or agreements, other than those contained therein, had been made or entered into, the principal had a right to rely thereon. If they had been able to read and write and had failed to do so, but relied upon representations as to the contents, they would not have been relieved from the effects of their agreements, but their failure to read and understand would have been their negligence, to escape which the law would have granted them no relief. *Dingle v. Trask,* 7 Colo. App. 16, 21, 42 Pac. 186; *Sponseller v. Kimball,* 246 Mich. 255, 260, 224 N. W. 359; *Yerxa v. Viviano* (Mo.), 44 S. W. (2d) 98, 99; *Hampton v. Lee,* 49 Idaho 16, 285 Pac. 1023; 13 C. J. 370; *Lee v. Loveland* et al., 43 Ga. App. 5, 157 S. E. 707; *Drogula v. Federal Co.,* 248 Mich. 645, 227 N. W. 692.

Where, as here, the principal has expressly limited his agent's authority, and does not have actual knowledge

of any false and fraudulent representation by the agent, to induce another to sign an order or contract, or of the ignorance or illiteracy of the person signing the same, one who is actually ignorant or illiterate may not escape the consequences of his written agreement, for, if it were otherwise, a premium would be thereby placed upon ignorance and illiteracy, and a penalty upon learning. Under the circumstances of this case, it was the duty of defendants to find someone who could correctly interpret the instrument and explain its meaning, before the same was signed and executed; and their failure to do so has brought about a situation which is the direct result of their own negligence. *Constantine v. McDonald*, 25 Idaho 342, 137 Pac. 531.

Plaintiff had a right to limit the power and authority of its agent, and to reserve the right to pass upon the order as sent it, and to assume that it correctly stated the terms and conditions upon which an intelligent person desired to contract with it; defendants, in their written offer to purchase the generator, expressly stated to plaintiff that no statement, agreement or representation had been made to them by any agent or representative of plaintiff, other than those contained in the written order; to now permit defendants to show otherwise would work a hardship upon plaintiff because of defendants' negligence, for it may be safely assumed that, had the order contained the provisions which defendants claim were to be in it, plaintiff would not have contracted. The negligence here was defendants'; and the loss, if any, must be theirs; for it is a well recognized rule of law that, where one of two innocent persons must suffer from the fraud of another, he who enabled the fraud to be perpetrated will be held responsible for the results. See *Hill & MacMillan, Inc. v. Taylor*, 304 Pa. St. 18, 155 Atl. 103, and notes thereto in 75 A. L. R. 1022, 1040 et seq.

Other assignments have been considered, but we do not deem them worthy of discussion.

The judgment was right and is affirmed.

Mr. Chief Justice Adams and Mr. Justice Campbell concur.