No. 15,778.

POMEROY *v.* THE PEOPLE.
(182 P. [2d] 139)

Decided June 9, 1947.

Mr. A. D. QUAINTANCE, Mr. E. B. EVANS, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*In Department.*

MR. JUSTICE HAYS delivered the opinion of the court.

PLAINTIFF in error was convicted of incest and statutory rape, involving his minor daughter. The latter, being called as a witness for the people, in response to various questions of the district attorney, answered in substance, upon twenty-three separate occasions, "I am not going to testify against my father." In the briefs of the attorney general it is said: "Her refusal to testify forced the people either to abandon the prosecution or submit the best evidence obtainable, and the district attorney elected to pursue this latter course."

In an effort to supply "the best evidence obtainable," and as a substitute for positive evidence, the district attorney called as witnesses, Carl Enlow, deputy sheriff, and Mrs. Dorothy Evans, county welfare worker, to tes-

tify as to extrajudicial statements alleged to have been made to them by the daughter, out of the presence of the defendant, wherein she allegedly implicated the latter in the commission of the offense.

■ In holding such testimony inadmissible, we said in *Clark v. People*, 103 Colo. 371, 373, 377, 86 P. (2d) 257: "Whatever the conversation was, it was held out of the defendant Clark's presence and hearing * * *. This testimony could not be received under any recognized exception to the hearsay rule, * * *. Its admission constituted reversible error.

\* \* \*

■ "Statements concerning the question of responsibility for an injury or physical condition are inadmissible. *Lowery v. Jones*, 219 Ala. 201, 202, 121 So. 704, 706, 64 A.L.R. 553, 555-6 (see also top of p. 564 of Annotation). The responsibility cannot be fixed in this roundabout way as a substitute for legal evidence that was not available."

We adhered to the above announced rule in *Cobianchi v. People*, 111 Colo. 298, 305, 141 P. (2d) 688, where, after quoting a portion of the above from the Clark case, we said: "In line with the foregoing, testimony of a statement by Geraldine to her physician as to the person responsible for her physical condition, is hearsay and incompetent."

In the trial below the district attorney contended that hearsay evidence was admissible for the purpose of impeaching the testimony of the daughter. When objection was made to such testimony, the district attorney said: "In this particular case the prosecution has shown that the witness in question, namely the victim of this rape, * * * has been shown to be hostile. She is, in fact so hostile she is now practically in contempt of court for her refusal to answer questions. The state therefore *has a right to impeach her testimony*, or her lack of testimony, by laying the foundation for further questions

and her testimony may be proved by other witnesses."
(Italics ours.)

In his presentation here, the attorney general properly
abandoned the above contention of the district attorney,
and concedes that such testimony is inadmissible for
purposes of impeachment. In his brief, he says:

"Here we have no question of impeachment, corrobo-
ration, or contradiction of witness * * *. We have, in-
stead, her refusal to testify. Under such circumstances,
the question is, we believe, may the district attorney,
suddenly confronted with a hostile witness, show the
material statements made by such witness at an earlier
time?

"We are constrained to admit that the testimony of
the witnesses Enlow and Evans as to the statements
made to them by * * * [the daughter] admitting that
she had engaged in acts of sexual intercourse with her
father, *was hearsay."* (Italics ours.)

Contrary to the contention of the district attor-
ney it is generally held that, "In no event may a purely
hearsay statement be admitted as substantive proof of a
fact under the guise of impeaching a witness." 20 Am.
Jur. 405, §458.

It is quite universally held: "The courts will not
receive the testimony of a witness as to what some other
person told him, as evidence of the existence of the fact
asserted." 31 C.J.S. 919, §193, citing the following Colo-
rado cases: *Stone v. Union Fire Ins. Co.,* 106 Colo. 522,
107 P. (2d) 241; *Shockley v. Hill,* 91 Colo. 451, 15 P. (2d)
623. The rule above announced also has been followed in
the following cases: *United States v. Graham,* 102 F. (2d)
436, 442; *State v. Brunet,* 88 N.J.L. 414, 97 Atl. 39; *State
v. Bodoin,* 153 La. 641, 96 So. 501; *People v. Furlong,* 392
Ill. 247, 64 N.E. (2d) 460; *State v. Hite,* 24 N.M. 23, 172
Pac. 419; *State v. Swan,* 25 Wash. (2d) 319, 171 P. (2d)
222; *Largin v. State,* 37 Tex. Crim. Rep. 574, 40 S.W. 280.

In the case last cited the court made the following ob-

servation, which is pertinent here: "The testimony was hearsay, and for this reason, under the circumstances of this case, was not admissible, nor was it admissible for the purpose of impeaching the State's witness, Shields. Shields had not testified to any fact damaging to the state, but had simply failed to testify that he paid twenty-five cents for the beer. The testimony could not be used as original evidence to supply a failure of the witness Shields, to testify to said fact."

In *State v. Bodoin, supra,* the court said: "An extrajudicial statement of a witness, when offered in evidence for the purpose of impeaching his testimony, does not serve any other purpose than to destroy the effect of the testimony given by the witness. The so-called impeaching statement is not evidence of any other fact than that the testimony given by the witness is not worthy of belief."

Notwithstanding the above, it is apparent from the record that while the evidence in instant case was submitted upon the theory of impeachment, the real reason for its introduction was to prove indirectly the alleged facts contained in the extrajudicial statement that could not be directly established through the testimony of the daughter because of her refusal to testify.

In view of the above and foregoing, we conclude that it was prejudicial error to admit the hearsay evidence, and accordingly, the judgment of the trial court is reversed and the cause remanded for further proceedings in harmony herewith.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE STONE concur.